# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>KAMI ELOIS POWER<br><br>*Defendant(s)* | Case No.  2:25-mj-0004 SCR |

**FILED**
Jan 08, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  August 23, 2022  in the county of  El Dorado  in the  Eastern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/ Jake Herminghaus
*Complainant's signature*

Jake Herminghaus, Task Force Officer
Federal Bureau of Investigation
*Printed name and title*

Sworn to me and signed via telephone.

Date: January 8, 2025

*Judge's signature*

City and state:  Sacramento, California

Sean C. Riordan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jake Herminghaus, having been duly sworn, state as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.  I am a Detective/Task Force Officer with the South Lake Tahoe Police Department and have been since October 30, 2007. I am currently assigned to the FBI Safe Streets Task Force. I graduated from the Police Academy in 2004, in Reno, Nevada. I became a sworn California Police Officer in 2007 when I was hired by the South Lake Tahoe Police Dept (hereinafter "SLTPD"). During my tenure with SLTPD, I have investigated child exploitation crimes, internet crimes, domestic violence, narcotics trafficking, gang activity, homicides, and organized crime. I have training in cellular phone communications, and I am certified by CELLEBRITE in cellular phone downloads and analysis. I have analyzed phone records, location data and cellular communication devices in numerous prior cases. I have an Institute of Criminal Investigation (ICI) specialty in homicide investigations, child crimes and sexual assaults' investigation. During my investigations, I have analyzed and reviewed social media accounts, including: Facebook, Meta, Instagram, Snap Chat, and discord.

2.  I am a Task Force Officer with the FBI and have been since 2018. I am currently assigned to the South Lake Tahoe Resident Agency (RA) of the Sacramento Division of the Federal Bureau of Investigation (FBI). I have been a Detective with SLTPD since 2015.

3.  As a deputized federal agent, I am authorized to investigate violations of laws of the United States issued under the authority of the United States. My investigative responsibilities include Violent Crime and Fugitive investigations.

4.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Where statements made by other individuals are referenced in this Affidavit, such statements are described in sum and substance and in relevant parts only.  Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant in a parts only.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that KAMI ELOIS POWER has violated 18 U.S.C. § 1344 – Bank Fraud.

7.      The FBI is investigating a criminal scheme that began no later than January 2020 and continued until in or around May 2023, wherein POWER devised a material scheme to defraud, and attempt to defraud, federally insured financial institutions.  POWER worked as an office assistance for a construction company, COMPANY 1.  POWER used her position and access to the company's financial information, bank accounts, payroll accounts, and company credit card to obtain money, funds, credits, assets, securities, and other property for her own personal benefit.  Overall, POWER embezzled approximately $1.4 million from her employer.

## PROBABLE CAUSE

8.      COMPANY 1 is a family-owned construction business.  COMPANY 2 is a related industrial equipment company.  At all times relevant to the complaint, COMPANY 1 and COMPANY 2 were located in South Lake Tahoe, in the state and Eastern District of California.

9.      In November of 2019, POWER was hired at COMPANY 1 to work in the front office.  One of the owners, OWNER 1, of COMPANY 1 believed the business was running smoothly in the office until he noticed a few suspicious transactions on the business accounts.  OWNER 1 attempted to access the companies online accounts for payroll, contractor's websites, and more, but POWER had taken over the accounts and restricted the owner's access.  Near the end of April 2023 through the beginning of May 2023, OWNER 1 demanded POWER to provide him with access to the accounts.  This is when fraudulent activity was found.

10.     OWNER 1 initially noticed approximately $13,000 in transactions on a credit card dating back to May of 2022 for items not associated with his business, such as a camera and

purchases from Amazon. Some of the purchases from Amazon were delivered to a Douglas Lane residence under the name of a relative of POWER. The transactions that totaled $13,000 dollars were not authorized by the business owners and appeared to be personal purchases. OWNER 1 questioned POWER about the credit card transactions on their business accounts because the owners had not made the purchases, and POWER was the only one who had access to the card. Shortly after confronting POWER about the unauthorized credit card transactions, POWER provided a two-week notice of her plans to leave the company.

11. After POWER left the company, OWNER 1 conducted further research into their accounts, such as payroll and other credit cards. Eventually, OWNER 1 discovered that one of their payroll accounts (Account -6199) had several unrecognized electronic withdrawals dating back to December of 2022. This account was only used for payroll, and these transfers were different than their usual payroll withdrawals.

12. Additionally, each month between December 2022 and April 2023 contained multiple withdrawals that appeared to be transfers from COMPANY 1's payroll accounts and various credit card accounts. The withdrawals totaled $139,847.30. COMPANY 1 did not have the various credit card accounts prior to POWER's employment and the owners did not authorize the openings of the credit card accounts.

13. Subsequent to POWER's departure from COMPANY 1, an audit of COMPANY 1 and COMPANY 2's financial accounts continued. COMPANY 2 is a separate business owned by the same owners; a heavy equipment company in Nevada. OWNER 1 discovered that POWER had embezzled money from both companies well in excess of the already identified approximately $13,000 - $14,000 in unauthorized credit card transactions. The money transfers went directly into bank accounts held by POWER.

**Internal investigation**

14. During a review of POWER's email accounts for both companies, COMPANY 1 located several credit union monthly financial statements belonging to POWER that she abandoned by leaving them on the company's computer. Also, a review of the payroll software

3

of COMPANY 1/ COMPANY 2 revealed an inactive profile for an employee identified only as "E." Several menus within the software were manipulated to find "E's" profile. Neither company employed any person only identified as, "E."

15. A further examination of the inactive payroll profile for "E" was conducted. During the examination of the employee "E's" profile within the payroll software, the company located personal information for employee "E" and determined that it was POWER's personal identifying information. POWER's work email address was listed for employee "E." Also, employee "E's" last four numbers of the social security number matched POWER's social security number, as well as POWER's date-of-birth. POWER's phone number was attached to the inactive profile listed as employee "E." Finally, it was discovered that the payroll paid to employee "E" was directly deposited into one of POWER's personal bank accounts.

16. From June 2022 through March 2023, COMPANY 2 had deposited approximately $30,055.25 into POWER's personal bank account using the fictitious employee profile identified as "E." POWER was not authorized to pay herself any funds, including payroll, from COMPANY 2's accounts. POWER was only authorized to transfer her legitimate earned payroll / paychecks from COMPANY 1's account. The approximate $30,000 transferred to POWER's bank account was unauthorized and not part of POWER's normal paycheck. Based on POWER's hourly wage, POWER would have received approximate $1,000.00 to $1,500.00 as legitimate pay weekly depending on whether she worked any overtime.

**Additional unauthorized transactions**

17. A review of POWER's personal bank account statement from June 2022 revealed several transactions where unauthorized funds were transferred from COMPANY 1 / COMPANY 2 to POWER's account.

18. A review of a summary of deposits made into POWER's accounts starting from January of 2020 until April of 2023 was conducted. The total amount of deposits from COMPANY 1 / COMPANY 2 into POWER's account was approximately $1.4 million. A comparison of the deposits into POWER's account with COMPANY 1 / COMPANY 2 bank

records was also conducted. It was determined that the amounts of money from one of COMPANY 1's checking accounts (-8550) appeared that they went to Bill.com, Capital Glass, Cashman Equipment Company, Iconix Waterworks (US) Inc. to make bill payments, but instead those amounts of money were directly deposited into POWER's account.

19. Deposits were titled, "Kami Power." A portion of the deposits were likely payroll deposits. There were also deposits found titled, "KEP INC SALE," that went from COMPANY 1 to POWER's personal account. "KEP" are POWER's initials (Kami Elois Power (KEP)). Several transactions that totaled $295,000, went from COMPANY 1 with a billing name of KEP incorporated. The billing name "KEP INC," went directly into POWER's personal bank account. There were also deposits from COMPANY 1 to "KPI." These deposits also went directly to POWER's account. The deposit amounts totaled approximately $53,622.00.

20. The investigation also revealed deposits that were paid out of COMPANY 2's bank account (-1525). These deposits totaled $26,631.00. POWER's bank account notated these deposits as "Payroll." However, the company never paid out any payroll through the COMPANY 2 bank account. The entire amount of $26,631.00 was misappropriated by POWER (embezzled).

### POWER used the embezzled funds for her own personal benefit

21. POWER wrote several checks to "cash" that drew from COMPANY 2's bank account (-1525). POWER inserted OWNER 1's digital signature onto the signature line of these checks without OWNER 1's knowledge or permission. POWER then cashed these checks. POWER made a material false statements on the checks by inserting OWNER 1's digital signature without his knowledge or permission.

### Power steals money from Company 1 on Aug. 23, 2022 by means of a $4,025 check.
### (Bank Fraud)

22. A check dated Aug. 1, 2022, in the amount of $4,025, which drew from COMPANY 1's bank account, BANK 1 (-8850) was deposited into POWER's personal bank account on Aug. 23, 2022.

23. In August 2022, POWER purchased a horse. Law enforcement obtained the text

messages between the seller and POWER to confirm the purchase. POWER paid for the horse by writing a check in the amount of $4,025 drawn from BANK 1. POWER inserted OWNER 1's digital signature onto the signature line of this check without OWNER 1's knowledge or permission. POWER had OWNER 1's digital signature on her work computer and used it to sign the check. POWER made a material false statement on the check by inserting OWNER 1's digital signature without his knowledge or permission.

24. As part of her scheme, in an attempt to cover her tracks, POWER deleted the aforementioned stolen checks from the company's internal records.

25. At all times relevant to this Indictment, the banks and credit unions referenced herein, were financial institutions as defined in 18 U.S.C. § 20, in that they were members of the Federal Deposit Insurance Corporation ("FDIC") and National Credit Union Association ("NCUA"), their deposits were insured by the FDIC and NCUA, and they were conducting banking business in interstate commerce.

## CONCLUSION

26. For the reasons stated above, there is probable cause to believe that POWER violated 18 U.S.C. § 1344 – Bank Fraud.

Respectfully submitted,

/s/ Jake Herminghaus
Jake Herminghaus
Detective/ FBI Task Force Officer
South Lake Tahoe Police Department

Subscribed and sworn to me before me over the telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d) on: January 8, 2025

The Honorable Sean C. Riordan
UNITED STATES MAGISTRATE JUDGE

/s/ *Whitnee Goins*
Approved as to form by AUSA Whitnee Goins

6

## United States v. Kami Power
## Penalty for Criminal Complaint

**Defendant**
**Kami Power**

### COUNT 1:

VIOLATION:      18 U.S.C. § 1344 – Bank Fraud

PENALTIES:      A maximum of up to 30 years imprisonment;
                Fine of up to $1,000,000; or both fine and imprisonment
                Supervised release of up to three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)