ERIC GRANT
United States Attorney
ELLIOT WONG
DHRUV SHARMA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KAMI ELOIS POWER,<br><br>　　　　　　　Defendant. | CASE NO. 2:25-CR-00010-DC<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>DATE: February 27, 2026<br>TIME: 9:30 a.m.<br>COURT: Hon. Dena M. Coggins |

　　　　The defendant, Kami Elois Power, embezzled over $1.4 million from a small family-owned construction business where she worked. Power was convicted at trial of 11 counts of wire fraud, in violation of 18 U.S.C. § 1343, three counts of bank fraud, in violation of 18 U.S.C. § 1344(2), and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The United States joins Probation's recommendation that the Court sentence Power to a high-end term of 125 months' imprisonment on counts one through 14 (to be served concurrently), plus the mandatory 24 months' imprisonment on the three counts of aggravated identity theft (to be served concurrently with one another but consecutive to the term of imprisonment for the wire fraud counts), for a total sentence of 149 months. For the reasons below, imposition of such a sentence is sufficient, but not greater than necessary, to comply with the sentencing factors outlined in 18 U.S.C. § 3553.

## I.   PROCEDURAL HISTORY

Power was initially charged in this case by complaint in January 2025 and appeared on a writ from state custody, where she had been serving a sentence for being a felon in possession of a firearm. (ECF 1, 5.) She was then indicted shortly thereafter. (ECF 6.) The indictment charged her with 11 counts of wire fraud in violation of 18 U.S.C. § 1343, three counts of bank fraud in violation of 18 U.S.C. § 1344(2), and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (ECF 6.) In September 2025, Power rejected the government's plea offer and demanded a speedy trial. (ECF 26.)

On October 30, 2025, the United States filed a superseding indictment, which only corrected an error in the indictment and contained the same charges. (ECF 48.) This case then proceeded to a jury trial on the superseding indictment. The jury found Power guilty on all counts. (ECF 81.) The jury also found two pieces of real property and a horse—all of which Power had purchased with stolen funds— were subject to forfeiture. (ECF 82-84.)

The matter was referred to the U.S. Probation Office to prepare a presentence report ("PSR"). (ECF 78.) Both parties submitted corrections to the draft PSR (ECF 91, pp. 30-31, 35-38), and the final PSR was filed on February 5, 2026. (ECF 91.) Two victim impact statements from the victims of Power's fraud were included with the PSR and as a supplemental attachment. (ECF 91, pp. 40-42; 92.) Power filed formal objections to the final PSR (ECF 93), to which the United States responded. (ECF 94.) This matter is now ready for sentencing, which is set for February 27, 2026.

## II.   SENTENCING GUIDELINES

In the PSR, the Probation Officer correctly calculated Power's sentencing range as follows. For her wire and bank fraud convictions:

1. Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 7.

2. 14 levels are added under § 2B1.1(b)(1)(H) because the loss amount was at least $550,000.

3. 2 levels are added under § 2B1.1(b)(10)(c) because Defendant used sophisticated means.

4. 2 levels are added under § 3B1.3 because Defendant abused a position of trust to perpetrate her criminal conduct.

5. 2 levels are added under § 3C1.1 because Defendant obstructed justice.

The resulting total offense level is 27, which corresponds to a sentencing guideline range of 100-125 months, when taking into account Power's criminal history category of IV. Then, pursuant to U.S.S.G. § 2B1.6, her remaining aggravated identity theft convictions call for a guideline sentence of the term of imprisonment required by statute, which is a consecutive 24 months' term of imprisonment. The United States agrees with the Probation Officer's calculation and requests that this Court adopt it.

### III.   RESTITUTION

The United States recommends that the Court require Power to pay restitution in the amount of $1,462,430.74 to Power's victims, as identified in the PSR. *See* 18 U.S.C. § 3553(a)(7).

### IV.   GOVERNMENT'S SENTENCING RECOMMENDATION

Pursuant to 18 U.S.C. § 3553(a), this Court must consider multiple factors in fashioning a sentence. In addition to the applicable guideline sentencing range, those factors include, among others, (a) the nature and circumstances of the offense and the defendant's history and characteristics; (b) the need for the sentence imposed to (i) reflect the seriousness of the offense, (ii) promote respect for the law and provide just punishment for the offense, (iii) afford adequate deterrence to criminal conduct, and (iv) protect the public from further crimes of the defendant; and (c) the need to provide restitution to the victims of the offense  Considering the 3553(a) factors, a custodial sentence of 149 months is warranted.

#### A.   Nature and circumstances of the offense /Defendant's history and characteristics/Seriousness of the offense/Just punishment

The nature and circumstances of Power's crime are serious and involve a years' long scheme in which she, as a trusted employee,embezzled over $1.4 million dollars from Haen Constructors and LT

Equipment. She stole money in myriad ways that demonstrated just how extensive her scheme was.

Power stole money from the victims by abusing her position and her access to the company's bank accounts, company credit card, internal accounting and recordkeeping programs, and payroll system. She obscured much of her embezzlement by disguising many of the payments she sent to herself, such that they looked to be legitimate business-related payments to subcontractors, vendors, or other businesses. (Counts 1-4.) She also abused her access to the company's payroll processing software by sending herself unauthorized payments that she disguised under a shell employee profile (counts 5-6) and by directly sending herself excess payments that she misclassified as payroll or reimbursement payments. (Counts 10-11.) Further, she transferred funds from the company's bank accounts to pay down the balance of her own personal credit cards (counts 7-8) and used the company credit card to make unauthorized personal purchases. (Count 9.) Finally, Power embezzled money by purchasing a horse with a fraudulent check and by writing checks out to "cash," on which she affixed victim Robert Haen's digital signature without his knowledge or permission. (Counts 13-17.)

Power was able to perpetrate her scheme because—as an office assistant and controller—she held a position of trust and managed the day-to-day finances of the company as a paid employee. Power was calculated in abusing the trust placed in her by exploiting her extensive access to the company's bank accounts, credit card, accounting and recordkeeping, and software to perpetuate her scheme and successfully avoided detection for years.

Power's embezzlement was extensive and clearly motivated by personal greed. She spent the stolen money to live a lavish lifestyle well beyond her documented means. She spent stolen money to purchase two houses, multiple vehicles, luxury vacations, and even bought a "companion" horse.

Incredibly, this is at least Power's *fifth* time embezzling large sums from an employer. As documented on pages 10-13 of the PSR, Power has two prior criminal convictions, a civil lawsuit, and a probation violation for perpetrating prior embezzlement schemes. In many ways, Power's embezzlement scheme against Haen Constructors was almost identical to how she carried out her prior offenses. For example, she used fake companies to disguise fraudulent payments, impersonated co-workers to sign fraudulent checks, and even obscured the source of funds provided for down payments on property sales (to make it appear to a mortgage lender that there was a legitimate source of funds

used in a real estate transaction). Power took the blueprint of her prior crimes and reused it in an even more expansive embezzlement scheme against the victims in the present case; she knew how to steal money from Haen Constructors and hide her thefts because she had done it many times before. Power has become bolder with each successive scheme—in the present case, she stole over $1.4 million, which is over twice the loss of any of her prior schemes.

The nature and circumstances of her offense and the need for just punishment are even more apparent when one considers the real-world impact that Power's crimes had on her victims. Power's crimes "altered [their] normal lifestyle" and she "almost succeeded" in destroying their business. PSR at p. 41. Beyond the significant financial losses and operational impact to the business, Power engaged in an "incalculable breach of trust" that caused "severe emotional damage," particularly to the elderly owners of the company. ECF 42 at pp. 2-3. Robert Haen accurately describes Power as a "predator" that engaged in "calculated deception" and "fundamentally eroded" the trust that the Haens now place in their employees. ECF 42 at p. 4. A 149-month sentence and significant restitution order accounts for this harm and the serious nature of her crimes, and provides just punishment.

### B. Specific Deterrence/Protect the public from further crimes of the defendant

The needs for specific deterrence and to protect the public from further crimes of the defendant cannot be understated and weighs in support of a significant term of imprisonment. As detailed above, Power perpetrated a years' long scheme, and her criminality extends decades in the past. Her crime was not the result of a momentary lapse of judgment; rather, it was a long-running and carefully planned scheme that moved with her from employer to employer.

Power's capacity for dishonesty and lack of remorse has been on full display during and after the perpetration of her scheme, throughout her testimony at trial, and in her interactions with the probation officer during pre-sentencing. She began her employment at Haen Constructors by lying about her qualifications, education, and work history. And, shortly after the victims hired her, Power made unverified claims to the victims about a ransomware attack, which caused the company to switch to new accounting software with fewer oversight safeguards. Then, when eventually confronted with evidence of her embezzlement, she quit and immediately went on the offensive by bringing a "frivolous, retaliatory lawsuit" against the victims (ECF 92), in which she made allegations of discrimination and

wrongful termination. When her then-wife divorced her, Power filed documents with the Nevada state court in which she falsely attested that certain properties she owned were not subject to any liens, when, in fact, she had already been arraigned on the indictment in this case and put on notice that the United States had identified those same assets as forfeitable.

During trial, Power testified in her own defense and lied extensively under oath before this Court. She made up fantastical claims about how the money she stole was an assortment of gifts, loans, bonuses, deferred compensation, and/or a convoluted system of reimbursements and wages for undocumented immigrants. She insisted on characterizing a loan from the Haens as a gift, even though she repaid the "gift" with funds she stole from the business. She argued that the money she stole to spend on her personal credit cards were actually reimbursements for expenses she had fronted for the Haens, even though the documentary and testimonial evidence easily contradicted those claims. During the pre-sentence investigation process, Power failed to complete and submit a cash flow/net worth statement and did not report any assets to the Probation Officer.[1] And, despite the overwhelming evidence of her guilt that was presented at trial, she has expressed no remorse and declined to discuss any facts of the offense with the probation officer.

Moreover, this is at least Power's fifth time embezzling large sums of money from an employer. Even a nine-year prison sentence for one of these prior offenses was not enough to deter her from—yet again—perpetrating a large-scale embezzlement scheme. The Court should now send a clear message to Power about the consequences of ever engaging in another fraudulent scheme in the future. As the PSR correctly notes, a 149-month sentence provides for "incremental punishment," which is appropriate in this case because of Power's escalating and undeterred misconduct. PSR, p. 24.

C. <u>General Deterrence/Respect for the law</u>

The need for general deterrence also supports the requested sentence. Multiple courts have recognized that general deterrence is especially important in the context of white-collar crimes like Power's. *See, e.g., United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022) ("General deterrence is more apt, not less apt, in white collar crime cases."); *United States v. Sample*, 901 F.3d 1196, 1200 (10th

---

[1] At trial, there was evidence presented about Power's ownership of other vehicles, which the United States had not pursued in forfeiture, as well as several bank accounts.

Cir. 2018) ("Congress has recognized that general deterrence is particularly important in the context of white collar crime"); *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' . . . Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." (citation omitted; alteration in original)); *accord United States v. Slavin*, 2022 WL 576016, at *2 (9th Cir. Feb. 25, 2021) (stating in the context of authorizing the involuntary administration of antipsychotic medication, "[w]e also find no error in the district court's observation that prosecution may carry enhanced value as a means of general deterrence where, as here, the alleged offense is a white-collar crime, whose perpetrators 'often calculate the financial gain and risk of loss.'" (quoting *Martin*, 455 F.3d at 1240)). A significant sentence in this case is needed to further the goal of general deterrence. Would-be fraudulent actors who seek to prey on small family-owned businesses must be made aware that preying on victims will result in a substantial amount of time in prison.

  **D.** <u>**Sentencing Disparities**</u>

  Further, following the recommended sentencing guideline range will avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6); *see also United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ") A guideline sentence also satisfies factors requiring the Court to consider the kinds of sentences available and the sentencing range established by the Guidelines. *See* 18 U.S.C. § 3553(a)(3) and (4).

///
///
///
///
///
///

V. **CONCLUSION**

The United States respectfully requests that this Court impose a custodial sentence in this case of 149 months and follow the recommendations of the probation officer in all other respects. Such a sentence is sufficient, but not greater than necessary, to address Power's conduct in this matter.

Dated: February 18, 2026

ERIC GRANT
United States Attorney

By: /s/ ELLIOT WONG
ELLIOT WONG
DHRUV SHARMA
Assistant United States Attorneys